UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

JTG VENTURES, LLC, JEFFREY WOLF, )
and JEAN WOLF )
 )
    Plaintiffs, )
 )
    v. ) Case No. 17-cv-464-TCK-FHM
 )
PROSPERITY BANK )
 )
    Defendant. )

## OPINION AND ORDER

Before the Court is Defendant Prosperity Bank's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") (Doc. 10). For the reasons discussed below, the Motion is **DENIED**.

### I.    Factual Background

This case arises out of a mortgage dispute between Defendant Prosperity Bank ("Prosperity") and Plaintiffs JTG Ventures ("JTG"), Jeffrey Wolf and Jean Wolf (collectively "Silver Sands Parties"). On or about May 9, 2011, JTG executed a promissory note with Prosperity. (Doc. 2-1 ¶ 9.) The Note was secured by a mortgage against the approximately eighty-seven (87) condominium units that JTG owned in the Silver Sands Apartments. (Doc. 2-1 ¶ 7, 9.) The Mortgage contained an assignment of rents provision. On February 10, 2015, Prosperity filed a Petition in Tulsa County District Court ("state court") to foreclose its mortgage lien upon certain real property, alleging that the Silver Sands Parties had defaulted (the "foreclosure suit"). (Doc. 10, pg. 2.)

On August 5, 2015, Prosperity notified the lessees of JTG's condominium units that all rent due thereafter was to be paid not to JTG, but instead to Prosperity. (Doc. 2-1 ¶ 21.) Silver

1

Sands Parties' agent countermanded this instruction. (Doc. 10, pg. 3). On November 3, 2015, Prosperity filed a Motion for Entry of Order Enforcing Assignment of Rents, which the state court granted. Prosperity later filed a Motion to Enforce the initial enforcement order on January 19, 2016, which the state court granted on February 29, 2016. After this Enforcement Order, Prosperity notified all lessees twice more that rent must be paid to Prosperity. (Doc. 2-1 ¶ 22-23.) After this, all lessees vacated their residences. (Doc. 2-1 ¶ 24.). Prosperity filed a Motion for Contempt and Application for Citation of Indirect Contempt against the Silver Sands Parties for interfering with the enforcement of the state court Orders to Enforce the Assignment of Rents provision on March 22, 2016.[1]

After the state court denied the Silver Sands Parties permission to file a counterclaim in the foreclosure suit, the Silver Sands Parties filed the instant action in Tulsa County District Court on August 4, 2017, alleging (1) Breach of Contract due to Prosperity's premature enforcement of the assignment of rents provision in the mortgage; (2) Constructive Eviction due to Prosperity's letters and other communications to Silver Sands Parties' lessees; (3) Interference with Contractual or Business Relationships due to Prosperity's letters and other communications to Silver Sands Parties' lessees; and (4) Intentional Infliction of Emotional Distress based on Prosperity's letters and other communications to Silver Sands Parties' lessees and Prosperity's Motion for Contempt. (Doc. 2-1.) Prosperity removed the case to this court on August 15, 2017. (Doc. 2.) On August 31, 2018, pursuant to an earlier jury verdict, the state court entered judgment in the foreclosure

---

[1] These dates are noted in the Tulsa County docket of the foreclosure suit, CJ-2015-558. Because the Tulsa County docket is relevant to whether Plaintiff has stated a claim upon which relief can be granted, this Court will take judicial notice of the docket. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.").

suit for Silver Sands Parties as to all of Prosperity's claims arising under its Business Loan Agreement, Promissory Note, Mortgage, and Guaranty. (Doc. 22, pg. 2; Doc. 22-1.)

## II. Prosperity's Motion to Dismiss

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Similarly, a complaint may be dismissed under Rule 12(b)(6) when an affirmative defense appears on its face. *Jones v. Bock*, 549 U.S. 199, 215 (2007). Litigation privilege is one of such affirmative defense. *See Berman v. Lab. Corp. of Am.*, 268 P.3d 68, 69 (Okla. 2011).

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins,* 519 F.3d at 1247. Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

3

## III. Litigation Privilege

Oklahoma recognizes "litigation privilege" which "accords attorneys, parties, jurors and witnesses immunity for comments or writings made during the course of or preliminary to judicial or quasi-judicial proceedings." *See Samson Inv. Co. v. Chevaillier*, 1999 OK 19, 988 P.2d 327 (Okla. 1999). Litigation privilege applies only when the communication is (1) relevant or has some relation to a proposed proceeding and (2) the circumstances surrounding the communications have some relation to the proposed proceeding. *Id.* at 330. Oklahoma courts have limited this privilege to documents and statements made and circulated in anticipation of, or preparation for litigation, or statements made before the Court during litigation. *See, e.g.*, *Stricklen v. O.I.P.M., L.L.C.*, 2017 OK CIV APP 3, 394 P.3d 290, 292-93 (Okla. Civ. App. 2017) (attorneys and their clients not liable for potentially false affidavit, filed as proof of service, stating that a party was served); *Springer v. Richardson Law Firm*, 2010 OK CIV APP 72, 239 P.3d 473, 475 (Okla. Civ. App. 2010) (attorneys and their clients immune from defamation liability based on a petition filed in state court); *State ex rel. Okla. Bar. Ass'n v. Dobbs*, 2004 OK 46, 94 P.3d 31, 45-47 (Okla. 2004) (attorneys and witnesses are not subject to an independent suit for perjury but are subject to professional discipline); *Samson*, 988 P.2d at 330-31 (attorneys immune from defamation liability for circulating a draft petition to a potential client); *Patel v. OMH Med. Ctr., Inc.*, 987 P.2d 1185, 1203 (Okla. 1999) (neither attorneys nor parties subject to separate suit for failure to fully respond in the course of discovery or for oral misrepresentations at trial); *Cooper v. Parker-Hughey*, 894 P.2d 1096, 1101 (Okla. 1995) (witnesses in civil cases are not liable for perjury based on that testimony); *Kirschstein v. Haynes*, 1990 OK 8, 788 P.2d 941, 954 (Okla. 1990) (attorney, witness, and party immune from defamation liability for publishing an allegedly false affidavit, and for an

4

intentional infliction of emotional distress claim based on the same factual underpinnings as the defamation claim).

Litigation privilege is concerned with the integrity and rigor of the proceedings before the Court. *Id.* Granting attorneys and their clients immunity from suit for their communications or statements prior to litigation or before the Court ensures that parties can bring the full extent of their legal grievances before the Court, with appropriate representation, without fear of being subject to lawsuits as reprisal. Similarly, granting witnesses immunity ensures that parties have full access to witness testimony without fears of reprisals. *Id.*

## IV. Analysis

Prosperity contends that the Silver Sands Parties' claims should be dismissed for failure to state a claim, as the claims are all based on conduct protected by litigation privilege. The Silver Sands Parties, however, contend that litigation privilege applies only to claims related to defamation, and not to "conduct."

### A. Litigation Privilege Does Not Apply to the Claims in this Case

Because this case is before the Court on the basis of diversity jurisdiction, the Court will apply the substantive law of Oklahoma. If the Oklahoma Supreme Court has not addressed the question of substantive law, the Court must determine what decision it would make if faced with the same facts and issues. *See Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988). The Silver Sands Parties' claims, in this case, are not the types of claims to which Oklahoma courts have applied litigation privilege. Accordingly, Prosperity is not immune from liability on the basis of litigation privilege.

Prosperity argues its communications with Silver Sand Parties' tenants are akin to the draft petition circulated in *Samson* and the allegedly false affidavit circulated between an attorney, the

affiant, and the party in *Kirschstein*. However, the draft petition circulated in *Samson* and the allegedly false affidavit in *Kirschstein* were prepared and circulated in preparation for litigation, an activity traditionally protected by litigation privilege. By contrast, Prosperity's communications with Silver Sands Parties' tenants were not made in preparation for litigation or before the Court during litigation, and therefore fall outside the traditional scope of litigation privilege. Moreover, both *Samson* and *Kirschstein* fall within the litigation privilege's policy goal of ensuring that parties have access to appropriate legal representation without fear of legal reprisal. By contrast, in the instant case, the assignment of rents is not integral to the Court's determination whether the Silver Sands Parties defaulted under the terms of the Note or Mortgage.

Additionally, Prosperity's communications were not necessary to fully litigate the underlying foreclosure suit, another instance in which Oklahoma courts have applied litigation privilege. For example, in *Patel v. OMH*, attorneys and parties were entitled to invoke litigation privilege for false statements made during the course of discovery. *See* 987 P.2d at 1203. These statements were appropriately considered statements before the court, because discovery was necessary to fully litigate the underlying claims. Though the assignment of rents in the foreclosure suit, like discovery, is subject to the management of the Court but is addressed largely between the parties, the assignment of rents was not necessary to litigate whether the Silver Sands Parties defaulted under the terms of the Note or Mortgage. Accordingly, unlike discovery, Prosperity's communications with the Silver Sands Parties' tenants are not appropriately considered statements before the Court. Since Silver Sands Parties' claims do not fall within either Oklahoma courts' traditional scope of litigation privilege or the policy goals of litigation privilege, Prosperity is not entitled to immunity based on litigation privilege.

### B. Silver Sands Parties' claims are not compulsory counterclaims or defenses

Prosperity argues that the Silver Sands Parties' claims are either compulsory counterclaims or defenses in the underlying foreclosure suit, rather than an independent claim for relief. (Doc. 16, pg. 3.) For a counterclaim to be compulsory, it must exist at the time the pleading is served and must arise out of "the same transaction and occurrence" as the subject matter of the opposing party's claim. OKLA. STAT. tit. 12. sec.. 2013. In this case, the Silver Sands Parties' claims against Prosperity did not exist at the time they were served with Prosperity's foreclosure suit Petition. The Silver Sands Parties allege claims based on Prosperity's communications with the Silver Sands Parties' tenants on August 5, 2015—over six months after Prosperity filed the foreclosure suit on February 10, 2015. Accordingly, the Silver Sands Parties' claims are not compulsory counterclaims to the foreclosure suit. Nor are the claims exclusively defenses to Prosperity's claims in the underlying foreclosure suit, because the question of whether Prosperity should have enforced the assignment of rents clause in the mortgage, and what, if any, damages the Silver Sands Parties have suffered as a result are not relevant to the question of whether the Silver Sands Parties' defaulted on the Note or Mortgage.

### V. Conclusion

Defendant Prosperity Bank has failed to demonstrate that Plaintiffs' claims are subject to litigation privilege and therefore subject to dismissal. Accordingly, Defendant Prosperity Bank's Motion to Dismiss is **DENIED.**

**DATED this 27th day of March, 2019.**

_____
TERENCE C. KERN
UNITED STATES DISTRICT JUDGE